**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CUSH WRIGHT-EL,

                Plaintiff,

   v.                                          9:21-CV-1082
                                                                    (LEK/DJS)

E. BISHOP, *Deputy Superintendent*,

                Defendant.

---

**APPEARANCES:**                                  **OF COUNSEL:**

CUSH WRIGHT-EL
16-A-2113
Plaintiff, pro se
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541

HON. LETITIA JAMES                       ANTHONY HUNTLEY, ESQ.
New York State Attorney General         Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging that Defendant violated his federal constitutional right to due process while he was

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 22, Am. Compl. The District Court reviewed the Amended Complaint under 28 U.S.C. §§ 1915 & 1915A and permitted Plaintiff's claims against Defendant Bishop, regarding alleged Fourteenth Amendment due process violations, to proceed. Dkt. No. 24 at p. 6. Defendant now moves for summary judgment under FED. R. CIV. P. 56 with respect to that claim. Dkt. No. 37. Defendant seeks judgment on the merits of the claim and on the basis of qualified immunity. Dkt. No. 37-13, Def's Mem. of Law at pp. 6-17. Plaintiff opposes the Motion. Dkt. No. 40, Pl.'s Opp.

For the reasons set forth below, the Court recommends that the Motion be granted.

## I. FACTUAL BACKGROUND

On October 26, 2020, while incarcerated at Clinton Correctional Facility, Plaintiff was issued a misbehavior report issued by Corrections Sergeant D. Duquette. Dkt. No. 37-11, Bishop Decl., ¶ 4; *see also* Dkt. No. 37-1, Huntley Decl., Ex A.[2] That report charged him with possession of a weapon and smuggling, regarding an incident on October 23, 2020. Huntley Decl. at Ex. A. Plaintiff was served with the misbehavior report on October 27, 2020. *Id.* at Ex. J at p. 1. He was provided a list of employees who could provide assistance to him before his disciplinary hearing. *Id.* at Ex. H. While

---

[2] The exhibits to the Huntley Declaration are contained in Dkt. Nos. 37-2 through 37-10.

the list permitted him to select up to three people for possible assignment as his assistant Plaintiff requested only that an individual named Plante be designated his assistant. *Id.* Plante was, in fact, appointed as Plaintiff's assistant and met with Plaintiff. Huntley Decl., Ex. D, Hearing Tr. at p. 4.[3]

Defendant Bishop was designated to be the hearing officer regarding the misbehavior report. Bishop Decl. at ¶ 13. The hearing was conducted in November 2020. *Id.* at ¶ 15; *see also* Hearing Tr. At the hearing Plaintiff objected to a lack of assistance, specifically alleging that he had not been provided certain documents. Hearing Tr. at p. 4. Plaintiff and Defendant discussed the documents Plaintiff had requested and Defendant explained to him why many could not be provided to him either because they contained confidential information or because they were not relevant to the specific charges pending against Plaintiff. *Id.* at pp. 4-7 & 20; Bishop Decl. at ¶¶ 19-21. At the hearing, Defendant heard testimony from Plaintiff, a confidential informant, the author of the misbehavior report, and an inmate witness called to testify at Plaintiff's request. Bishop Decl. at ¶¶ 25-27 & 30.

At the conclusion of the hearing, Defendant found Plaintiff guilty of each charge and issued a written determination. Huntley Decl., Ex. J. A penalty of 300 days confinement in the Special Housing Unit ("SHU") was imposed. *Id.*

---

[3] Citations to pages of the Hearing Transcript are to the page numbers provided by the Court's CM/ECF system.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). In considering a summary judgment motion, the Court's role "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

#### A. Merits of the Due Process Claim

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation omitted); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).

### 1. Liberty Interest

In *Sandin v. Conner*, the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 483-84 (1995). To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Palmer v. Richards*, 364 F. 3d 60, 64 (2d Cir. 2004). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *Id.* While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).

> Although the Second Circuit has explicitly avoided creating a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights, the Court has established guidelines. Where the plaintiff is confined for an intermediate duration - between 101 and 305 days – development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required.

*Smith v. Hamilton*, 2016 WL 3823395, at *3 (N.D.N.Y. July 12, 2016) (internal quotations and citations omitted).

Here, Plaintiff testified that he was held in SHU for 285 days following the determination at issue. Huntley Decl., Ex. I, Pl.'s Dep. at p. 20. He alleges that during that time he was housed in a "filthy" cell, denied proper medical care, and was exposed to another inmate who had tested positive for Covid-19 and that, as a result, he tested positive for the disease as well. Am. Compl. at ¶¶ 32-43. Plaintiff offers no specific details regarding the alleged condition of his cell. Purely conclusory allegations, such as this, are insufficient "to establish that he experienced atypical and significant hardship." *Rucano v. Annucci,* 2021 WL 3293504, at *27 (N.D.N.Y. May 19, 2021), *report and recommendation adopted sub nom. Rucano v. Venettozzi,* 2021 WL 3292394 (N.D.N.Y. Aug. 2, 2021); *see also Levola v. Bellinger*, 2011 WL 13273630, at *4 (N.D.N.Y. July 20, 2011). Plaintiff's claim regarding the denial of medical care – "I suffered through excruciating pain, agony, and was given no help nor have I ever seen a doctor," Am. Compl. at ¶ 42 – is equally conclusory and belied by the factual record which shows that Plaintiff was seen multiple times by medical personnel while he was housed in the SHU. *See generally* Dkt. No. 38. Finally, with respect to Covid, the Court must recognize that "the COVID pandemic raised the bar on what normally would be considered an 'atypical and significant hardship.' During the pandemic, the ordinary incidents of prison life became much harder for all prisoners." *Brown v. Toney*, 2023 WL 3390886, at *5 (E.D. Wis. May 11, 2023), *aff'd*, 2024 WL 889243 (7th Cir. Mar. 1, 2024). Even accepting as true Plaintiff's claims that a Covid positive inmate was housed

in SHU at the same time as him, that allegation does not support a finding of atypicality at the relevant time given Covid's prevalence.

Plaintiff has failed to establish the existence of a triable question of fact as to whether he was housed under atypical and significant conditions and so the Court recommends that summary judgment is appropriate on Plaintiff's due process claim.

### 2. The Process Due

Even if the atypicality of Plaintiff's confinement presented a question of fact, Plaintiff received the process due to him and summary judgment on that ground is also appropriate.

In the context of inmate disciplinary hearings, the Fourteenth Amendment requires inmates receive certain protections including: (1) at least twenty-four hours written notice of the disciplinary charges; (2) be permitted to call witnesses and present evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (3) be judged by a fair and impartial hearing officer; (4) the disciplinary conviction be supported by some evidence; and (5) be provided with a written statement of fact findings that support the disposition as well as the reasons for the disciplinary action taken. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974).

"To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." *Clark v. Dannheim*, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008). This is so because, as the

Second Circuit has noted, "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial." *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991).

### *1. Notice of the Disciplinary Charges*

The disciplinary hearing at issue here began November 10, 2020 and the record indicates that Plaintiff acknowledged receiving notice of the charges on October 27, 2020. Hearing Tr. at p. 3. This element, therefore, was clearly satisfied.

### *2. Assistance and Ability to Present Evidence*

"An inmate's right to assistance with his disciplinary hearing is limited." *Young v. Polizzi*, 2018 WL 3949967, at *7 (N.D.N.Y. July 11, 2018), *report and recommendation adopted*, 2018 WL 3949942 (N.D.N.Y. Aug. 16, 2018). The employee assistant "need only perform what the plaintiff would have done but need not go beyond the inmate's instructions." *Id.* Whatever the full extent of the required inmate assistance may be, the Second Circuit has concluded that "such help certainly should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses." *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988). "However, any violations of this qualified right are reviewed for harmless error." *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009) (internal quotation omitted).

While objecting that he did not receive proper pre-hearing assistance, neither the Complaint nor Plaintiff's opposition papers spell out exactly why that is. *See generally*

Compl.; Pl.'s Opp. At the disciplinary hearing itself, Plaintiff admitted that he met with his assistant, but stated he had not received material he requested. Hearing Tr. at p. 4. Defendant then asked Plaintiff what information he had requested and attempted to address Plaintiff's concerns. *Id.* at pp. 4-7; *see also* Bishop Decl. at ¶¶ 19-20. Plaintiff has failed to articulate any harm and so his claim regarding lack of assistance fails.

The record reflects that several documents Plaintiff claims to have sought from his assistant were not relevant to the particular misbehavior charges he faced. For example, Defendant found that the unusual incident report, video, and photos related to the discovery of the weapons in the facility yard were not relevant to Plaintiff because he was not actually charged with bringing the weapons to the yard. Bishop Decl. at ¶ 20. Evidence relating to them was not permitted at Plaintiff's hearing. The failure to Plaintiff's assistant to obtain ultimately irrelevant evidence was harmless. *Brown v. Dep't of Corr. Servs. of New York State*, 2013 WL 791393, at *9 (W.D.N.Y. Mar. 4, 2013).

Plaintiff also objects that Defendant did not permit him to recall a fellow inmate who had previously testified at the hearing. Am. Compl. at ¶¶ 15-16. Defendant declined the request to recall the witness who had already testified that Plaintiff had not engaged in any misconduct because further testimony would be duplicative. Bishop Decl. at ¶ 33. Due process did not require that Plaintiff be permitted to introduce redundant information at his disciplinary hearing. *Colon v. Annucci*, 344 F. Supp. 3d

612, 634 (S.D.N.Y. 2018); *Brooks v. Rock*, 2014 WL 1292232, at *28 n.30 (N.D.N.Y. Mar. 28, 2014).

To the extent Plaintiff objects to the failure to provide him with access to confidential portions of documents, it is clear that he was not entitled to information about confidential informants or information redacted from DOCCS materials for security reasons. *Boose v. Schneider*, 2016 WL 8732644, at *6 (N.D.N.Y. Feb. 19, 2016), *report and recommendation adopted*, 2016 WL 1175224 (N.D.N.Y. Mar. 24, 2016).

Plaintiff, therefore, has failed to show that any harmful errors resulted from his purported failure to obtain assistance.

### 3. Impartial Hearing Officer

"An impartial hearing officer is one who 'does not prejudge the evidence' or an inmate's guilt." *Sowell v. Bullis*, 2016 WL 1696454, at *13 (N.D.N.Y. Mar. 25, 2016), *report and recommendation adopted*, 2016 WL 1700410 (N.D.N.Y. Apr. 27, 2016). None of Plaintiff's complaints establish bias on the part of Defendant.

At the hearing, Plaintiff objected to a lack of pre-hearing assistance. Hearing Tr. at pp. 4-7. Bishop attempted to address some of Plaintiff's concerns, but Plaintiff now objects that doing so "crossed the [adversarial] line." Pl.'s Opp. at p. 3. While the hearing officer inserting himself in the place of the assistant may, under certain circumstances be problematic, *see Lee v. Coughlin*, 902 F. Supp. 424, 433 (S.D.N.Y. 1995), as outlined above there was no error in Bishop's review of Plaintiff's requests

for records nor has Plaintiff articulated any prejudice that would implicate the concerns discussed in *Lee*.

Plaintiff makes a general claim that Bishop operated under a conflict of interest because he was familiar with the underlying facts in his capacity as Deputy Superintendent at Clinton C.F. Am. Compl. at ¶¶ 7-8. The Court notes that given "the special characteristics of the prison environment, it is permissible for the impartiality of [hearing officers] to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process." *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989). The fact that a hearing officer may have had information regarding the underlying incident does not itself create an impermissible conflict for purposes of due process. *Moore v. Griffin*, 2015 WL 5330366, at *10 (N.D.N.Y. Sept. 11, 2015). Plaintiff has alleged no facts suggesting a reason to depart from this established rule.

Moreover, "[w]here claims of bias are based on purely conclusory allegations, 'they are routinely dismissed.'" *Williams v. Chuttey*, 2017 WL 9673722, at *11 (N.D.N.Y. Sept. 5, 2017), *report and recommendation adopted*, 2018 WL 1413049 (N.D.N.Y. Mar. 21, 2018) (quoting *McAllister v. Call*, 2014 WL 5475293, at *12 (N.D.N.Y. Oct. 29, 2014)); *see also Brown v. Dubois*, 2017 WL 9511165, at *3 (N.D.N.Y. Feb. 28, 2017), *report and recommendation adopted*, 2017 WL 1102746 (N.D.N.Y. Mar. 24, 2017) ("Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are

routinely dismissed."); *Lopez v. Whitmore*, 2015 WL 4394604, at *11 (N.D.N.Y. July 16, 2015) ("An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact."). Prison officials serving as hearing officers "are presumed to be unbiased." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). Nothing in Plaintiff's Amended Complaint rebuts that presumption here.

Plaintiff also raises certain objections about the manner in which the hearing was conducted by Defendant Bishop as violative of due process. It is well-established that "[i]n the context of a prison disciplinary hearing, inmates retain rights under the Due Process Clause of the Fourteenth Amendment, but the full panoply of rights due a defendant in a criminal prosecution does not apply." *McCormack v. Cheers*, 818 F. Supp. 584, 593 (S.D.N.Y. 1993) (citing *Wolff v. McDonnell*, 418 U.S. at 556) (internal quotation omitted). While Plaintiff makes much of a purported denial of his Confrontation Clause rights, Pl.'s Opp. at p. 2, "[i]t is well-established that inmates do not have a constitutional right of confrontation in the context of a disciplinary hearing." *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993). Similarly, Plaintiff's allegations that evidence obtained as fruit of the poisonous tree is not a basis for a due process claim because that doctrine does not apply to prison disciplinary hearings. *Zimmerman v. Todd*, 2018 WL 4691254, at *7 (N.D.N.Y. Aug. 30, 2018), *report and recommendation adopted*, 2018 WL 4689105 (N.D.N.Y. Sept. 28, 2018); *Neree v. O'Hara*, 2011 WL 3841551, at *11 (N.D.N.Y. July 20, 2011), *report and recommendation adopted*, 2011 WL 3841553 (N.D.N.Y. Aug. 29, 2011).

Plaintiff also objects to Defendant's alleged improper "bootstrapping" of a conspiracy claim into Plaintiff's disciplinary hearing. Pl.'s Opp. at p. 4. The misbehavior report, however, clearly indicated that Plaintiff had "conspired" with another inmate to smuggle weapons. Huntley Decl., Ex. A. The subsequent discussion of a conspiracy, which even Plaintiff asked about during his hearing, therefore, is not evidence of bias on the part of Defendant since it was plainly an issue presented by the misbehavior report.[4]

### *4. Some Evidence*

"[J]udicial review of the written findings required by due process is limited to determining whether the disposition is supported by some evidence." *McDonald v. Zerniak*, 2016 WL 6581289, at *5 (N.D.N.Y. Nov. 4, 2016) (internal quotation and alteration omitted). This requires the Court to determine "whether there was reliable evidence of the inmate's guilt." *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004). Plaintiff makes no specific claim regarding a lack of sufficient evidence. *See generally* Pl.'s Opp.

In this case, the hearing officer specifically relied on the misbehavior report, testimony of the report's author, which the hearing officer found credible, testimony from a confidential informant, photographic evidence, and the testimony of the witness

---

[4] There was not a standalone conspiracy charge, nor was Plaintiff found guilty of one.

Plaintiff requested testify. Huntley Decl., Ex. J at p. 4; *see also* Bishop Decl. at ¶¶ 39-40.[5]

"[I]t is not the role of the Court to evaluate the credibility of witnesses at a disciplinary hearing." *Johnson v. Goord*, 487 F. Supp. 2d 377, 385 (S.D.N.Y. 2007). Instead, "it was within the hearing officer's province to assess the credibility of the witnesses." *Alsaifullah v. Smith*, 2016 WL 1595391, at *7 (N.D.N.Y. Apr. 20, 2016). Here, Defendant specifically found the testimony of correctional staff credible. Bishop Decl. at ¶ 40. "The fact that [Bishop] made these credibility assessments does not amount to a due process violation." *Pilgrim v. Dixon*, 2012 WL 4052003, at *2 (W.D.N.Y. Sept. 13, 2012). "Defendant [] was entitled to make credibility determinations in rendering his decision and Plaintiff's own testimony to the contrary does not render the disposition unsupported by some evidence." *Kotler v. Daby*, 2013 WL 1294282, at *10 (N.D.N.Y. Mar. 28, 2013). At the hearing, Duquette testified consistent with his misbehavior report that following an investigation it was determined that Plaintiff had conspired with another inmate to move weapons out to the facility recreation yard. Hearing Tr. at p. 27. The "some evidence" standard is satisfied when hearing testimony was consistent with the written misbehavior report. *See Hinton v. Prack*, 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) (citation omitted); *Kotler*

---

[5] The copy of the disciplinary hearing transcript provided to Plaintiff in support of the Motion is redacted to remove reference to the confidential witness who testified. Hearing Tr. at pp. 11-16. While Defendant has provided the Court with an unredacted version of that transcript, the Court notes that "*in camera* review is generally not appropriate at the summary judgment stage in the absence of special circumstances." *Abdul-Halim v. Bruyere*, 2021 WL 3783087, at *3 (N.D.N.Y. Aug. 26, 2021) (citing cases). In the absence of any demonstrated special circumstances, the Court has not considered the *in camera* submission. *Id.*

*v. Daby*, 2013 WL 1294282, at *10; *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (same).

Some evidence, therefore, supported the determination.

### 5. Written Notice of Determination

Finally, the record is clear that Plaintiff received a copy of the disciplinary determination issued by Defendant. The transcript of the disciplinary hearing reflects that the full disposition was read into the record. Hearing Tr. at pp. 35-36. The record also reflects that, although Plaintiff could not sign the form because he was restrained at the time of the hearing, a copy of the disposition was provided to him. Huntley Decl., Ex. J at p. 10. Plaintiff also clearly received a copy since he testified at his deposition that he administratively appealed the determination. Pl.'s Dep. at p. 37. This element of due process, therefore, was clearly satisfied.

### B. Qualified Immunity

Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In other

words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Although the caselaw regarding the obligations of a hearing officer have long been well-established, no reasonable official in Defendant Bishop's position would have known that the manner in which he conducted Plaintiff's disciplinary hearing violated that established law. For example, no reasonable official could have known that refusing to provide confidential material to Plaintiff or refusing to recall a witness who had already testified favorably to Plaintiff would prejudice Plaintiff. For all the reasons discussed above, Defendant Bishop conducted Plaintiff's disciplinary hearing in a manner consistent with due process and is entitled to summary judgment.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 37) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[6] within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: May 14, 2024
　　　　Albany, New York

　　　　　　　　　　　　　　　　　　　　Daniel J. Stewart
　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).